No. 15-16722

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

DENNLY R. BECKER; THE BECKER TRUST DATED MARCH 25, 1991

*Plaintiff-Appellant*,

v.

WELLS FARGO BANK, N.A., INC.; WACHOVIA MORTGAGE
CORPORATION

*Defendant-Appellee*.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
_____

*Appeal from a Decision of the United States District Court for the Eastern District of California
2:10-cv-2799 - Honorable Troy L. Nunley*

_____

# OPENING BRIEF FOR PLAINTIFF-APPELLANT
# DENNLY R. BECKER, et al.
# Appendix, Addendum, and Motion to Supplement the
# Record Filed Concurrently In Support

_____

Dennly R. Becker
5462 Betty Circle
Livermore, CA 94550
(925) 245-1457
*Plaintiff-Appellant, Pro*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................ i

TABLE OF AUTHORITIES ................................................. iii

1. JURISDICTIONAL STATEMENT ..................................... 1

2. INTRODUCTION ............................................................ 2

3. ISSUES PRESENTED ...................................................... 3

    A. Does HOLA Apply To Becker's Claims? ................................. 3

    B. Does HOLA Preempt California's Commercial, Criminal,
    or Contract Laws?........................................................ 4

    C. Should Certain FAC and TAC Claims Been Dismissed
    With Prejudice? .......................................................... 4

4. STATEMENT OF THE CASE ........................................... 4

5. SUMMARY OF THE ARGUMENT ................................... 8

    A. HOLA Does Not Apply To Becker's Claims ........................... 8

    B. HOLA Does Not Preempt California's Commercial, Criminal,
    or Contract Laws........................................................ 9

    C. Certain FAC and TAC Claims Should Not Have Been Dismissed
    With Prejudice......................................................... 10

6. ARGUMENT ............................................................... 10

    Review Record ........................................................... 10

    Review Standard ........................................................ 10

A. HOLA Does Not Apply To Becker's FAC and TAC Claims ................ 11

B. HOLA Does Not Preempt California's Commercial, Criminal,
or Contract Laws ..................................................................... 15

C. Certain FAC and TAC Claims Should Not Have Been
Dismissed With Prejudice ....................................................... 17

    a. FAC Claims ................................................................. 17

      (1) Wachovia Extinguished Becker's Loan Obligations ............ 17

      (2) Neither Wachovia Nor Wells Fargo Owns Plaintiff's
Notes so Foreclosure is Wrongful ......................... 27

    b. TAC Claims ................................................................. 38

      (1) The Deeds Of Trust Do Not Provide For Sale
Of Becker's Property ............................................. 40

      (2) Improper Foreclosure Process ................................ 44

7. CONCLUSION ..................................................................... 49

8. STATEMENT OF RELATED CASES ........................................... 52

8. CERTIFICATE OF COMPLIANCE ............................................. 53

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ashcroft v. Iqbal*
  555 U.S. 1030, 2008 ...................................................................... 30

*Becker v. Wells Fargo Bank, N.A. Inc.*
  9th Cir. Dkt. No. 14-16783 .......................................................... 53

*Bell Atlantic Corp v. Twombly*
  550 U.S. 544, 2007 ................................................................. 30, 45

*Boring v. Nationstar Mortgage, LLC*
  2014 WL 5473118 (E.D. Cal. Oct., 2014) ...................................... 24

*Chaghouri v. Wells Fargo Bank, N.A.*
  2015 WL 65291 (N.D. Cal., January 5, 2015) ................................ 24

*DeLeon v. Wells Fargo Bank, N.A.*
  729 F.Supp.2d 1119 (N.D. Cal., 2010) .......................................... 40

*Digital Equip. v. Desktop Direct., Inc.*
  511 U.S. 863 ................................................................................... 1

*Flowers v. First Hawaiian Bank*
  295 F3d 966 (9th Cir., 2002) ........................................................ 11

*Giordano v. Wachovia Mortg., FSB*
  2010 WL 5148428 (N.D. Dec. 14, 2010) ........................................ 41

*In re Kang Jin Hwang, Debtor*
  2008 WL 4899273 (Bkrtcy. C.D. Cal) ........................................... 33

*Lopez v. Wash. Mut. Bank*
  302 F.3d 900 (9th Cir. 2002) ........................................................ 10

*Lucas v. Department of Corrections*
  66 F3d 245 (9th Cir. 1995) ........................................................... 11

*Manzarek v. St. Paul Fire & Marine Ins. Co.*
519 F3d 1025 (9th Cir., 2008) .............................................................. 10

*Penermon v. Wells Fargo Bank, N.A.* ............................................. 13, 15
47 F.Supp.3d 982 (N.D. Cal. June 11, 2014)

*Pimentel v. Wells Fargo, N.A.*
2015 WL 2184305 (N.D. Cal. May 7, 2015) .................................... 12, 13, 15, 42

*Robins v. Carey*
481 F.3d 1143 (9th Cir. 2007) ............................................................ 11

*Russell Road Food & Beverage, LLC v. Galam*
2013 WL 2949615 (D. Nev. June 13, 2013) ....................................... 15

*Wells Fargo Bank, N.A. v. Heintz*
2012 WL 9496361 (C.D. Cal., Jan., 2012) ...................................... 45, 47

## STATE CASES

*Bruntz v. Alfaro*
212 Cal.App.3d 411 (July, 1989) ....................................................... 22

*City of Hollister v. Monterey Insurance Co.*
165 Cal.App.4th 455 (July, 2008) ...................................................... 22

*Lona v. Citibank, N.A.*
202 Cal.App.4th 89 (2011) ................................................... 25, 35, 48

*Pfeifer v. Countrywide Home Loans, Inc.*
211 Cal.App.4th 1250 (2012) ................................................ 25, 35, 48

*Pribus v. Bush*
118 Cal.App.3d 1003 (1981) .............................................................. 34

## FEDERAL STATUTES & REGULATIONS

12 U.S. C. § 2105 ........................................................... 22, 26

28 U.S.C. § 2106 ............................................................. 3

12 C.F.R § 34.4 ........................................................ 32, 38, 43, 49

12 C.F.R § 560.2 ........................................ 16, 31, 38, 40, 41, 43, 49, 51

## STATE STATUTES

Cal. Civ. Code § 47 ...................................................... 26, 36, 43

Cal. Civ. Code § 1511 ....................................................... 23, 24

Cal. Civ. Code § 1512 ........................................................ 23

Cal. Civ. Code § 2924 ..................................... 26, 35, 36, 40, 41, 42, 43

Cal. Civ. Code § 2943 ........................... 10, 17, 19, 18, 23, 26, 42, 49, 50

Cal. Penal Code §115 ......................................................... 45

Cal. Penal Code §115.5 ....................................................... 45

Cal. Penal Code §470 ......................................................... 45

## OTHER AUTHORITIES

Preemption of State Laws Applicable to Credit Card Transactions
  Opinion of OTS Chief Counsel, Dec. 24, 1996, 1996 WL 767462 .................... 16

OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sep. 30, 1996) ........................

## 1.   <u>JURISDICTIONAL STATEMENT</u>

On December 14, 2010, the below court granted Becker's motion for a preliminary injunction enjoining Wells Fargo from foreclosing on his Shelborne, Third Street and Larkflower properties (ECF # 21). Becker posted a monthly bond to maintain the preliminary injunction. On August 18, 2015, the below court granted Wells Fargo's motion to disburse the preliminary injunction bond funds in the amount of $84,335.00 (ECF # 264). Becker filed a timely appeal on August 26, 2015 (ECF # 265).

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. *See Digital Equip. Corp. v. Desktop Direct, Inc*., 511 US 863, 868, 114 S.Ct. 1992, 1996 (1994) (Generally, "a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated.").

## 2.   <u>INTRODUCTION</u>

This is the third appeal related to Becker's complaint. The previous appeals, 14-16783 and 15-15322, have been fully briefed. Becker's complaint concerns the property rights of nine single family residence investment properties he purchased. All nine were originally financed by World Savings FSB. Through a series of acquisitions and then mergers Wachovia and then Wells Fargo obtained servicing

1

rights for the loans but did not become the payee, mortgagee, or beneficiary for the loans. Becker is current on six of the loans but defaulted on three of the properties which are located at 865 Shelborne Drive, Tracy, CA, 95377; 2416 3RD Street, Lincoln, CA, 95648; and 1895 Larkflower Way, Lincoln, CA 95648. In November of 2014, Wells Fargo non-judicially foreclosed on the Shelborne and 3RD Street properties.

The notes and deeds of trust for all nine properties contain the same essential clauses. Wells Fargo has made the notes and deeds of trust for all of the nine properties part of the district court record through the deposition of their PMK, Michael Dolan (ECF # 179, #2 Dcln. Michael Dolan, ¶ 14;  Exhibits B through J). The notes and deeds of trust for the Shelborne, 3RD Street, and Larkflower properties (Exhibits H, I, & J) are attached (Apndx. 1).

One legal sage has opined that common law is the best law because it involves judicial decisions based on well researched briefs by attorneys representing both sides of an argument. Homeowners about to lose their homes to foreclosure and who have few resources have not had the benefit of this process. In general, homeowners have found that when their retainer ran out, so did their attorney leaving courts with only one side of an argument. As a result, some courts believe that HOLA applies to banks chartered under the National Bank Act. Some courts believe notes are the same as mortgages so that HOLA preempts the

California Commercial Code. Some courts believe that HOLA preempts California's non-judicial foreclosure laws but that banks can use the preempted laws to foreclose but homeowners cannot advance claims of misconduct related to the foreclosure because the law is preempted.

In the Ninth Circuit, the law related to foreclosure and loan modification is not consistent. The law is not consistent between districts and is not consistent between individual judges within a district. For homeowners, the law depends upon which judge is assigned to their case. The situation is untenable and requires resolution by this Court under its supervisory power pursuant to 28 U.S.C. § 2106.

### 3.    ISSUES PRESENTED

Wells Fargo argued that by prevailing on the merits of the action, Wells Fargo has established that it was wrongfully enjoined (ECF # 250; 2:20-27). However, Wells Fargo should not have prevailed on the merits of the action and was not wrongfully enjoined.

**A. Does HOLA Apply To Becker's Claims?**

Based on HOLA preemption, the below court dismissed with prejudice certain FAC and TAC claims based on state laws. There is a divergence of opinion at the district court level concerning when HOLA is applicable. Becker's FAC and TAC claims occurred after Wachovia Mortgage, FSB merged into Wells Fargo Bank, N.A. Therefore, according to recent district court opinions, HOLA did not apply to

3

Wells Fargo's violation of state laws. Based on HOLA preemption, the below court erroneously dismissed FAC and TAC claims that would have prevented non-judicial foreclosure and justified the preliminary injunction

**B. Does HOLA Preempt California's Commercial, Criminal, or Contract, Laws?**

Even if HOLA applied to Becker's claims, HOLA does not preempt California's Commercial, Criminal, or Contract laws. Yet, the below court dismissed with prejudice Becker's FAC and TAC claims based on these laws. These claims would have prevented non-judicial foreclosure and justified the preliminary injunction.

**C. Should Certain FAC and TAC Claims Been Dismissed With Prejudice?**

Based on the above, certain FAC and TAC claims should not have been dismissed with prejudice and without leave to amend. The claims would have prevented non-judicial foreclosure and justified the preliminary injunction.

## 4. <u>STATEMENT OF THE CASE</u>

Becker purchased the nine properties identified in his complaint through loans originated with World Savings FSB. The Shelborne loan originated on February 4,

2005. The 3RD Street loan originated on June 24, 2005. The Larkflower loan originated on July 12, 2005 (Apndx. 1).

On October 1, 2006, Wachovia purchased Golden West Financial Corporation. for a purchase price of $24.3 billion. The purchase included the World Savings loan portfolio. (Apndx. 2)

On December 31, 2007, the name change from World Savings Bank, FSB to Wachovia Mortgage, FSB, became effective (Apndx. 3)

On December 31, 2008, Wells Fargo purchased the assets of Wachovia for a purchase price of $23.1 billion (Exh. 1)

On November 1, 2009, Wachovia Mortgage, FSB converted to Wells Fargo Bank Southwest, N.A.; which then merged with and into Wells Fargo Bank, N.A. (Apndx. 3).

For the period starting December, 2006, through June, 2009, World Savings/Wachovia Mortgage securitized or sold about 55% of the loan portfolio that included Becker's loans (ECF # 42; p. 6:22 - 16:2).

On November 4, 2009, Becker called Wachovia Loan Counseling and spoke with an agent who identified himself as Mr. Saris. Through discovery Saris was

identified as Daniel Mazariego. Mr. Mazariego made representations that led to this law case (ECF # 98, TAC ¶ 17).

On September 15, 2010, Becker filed his original complaint in the Superior Court of the State of California for the County of San Joaquin (ECF #1, p. 1:26 - 2:1).

On September 23, 2010, Wells Fargo had a Notice of Default (NOD) for the 3RD Street property recorded in Placer county. (ECF # 179, #2 Dcln. Michael Dolan, ¶ 28; Exhibit U). (Apndx. 4)

On September 30, 2010, Wells Fargo had a NOD for the Shelborne property recorded in San Joaquin county. (ECF # 179, #2 Dcln. Michael Dolan, ¶ 28; Exhibit T). (Apndx. 5)

On October 4, 2010, Wells Fargo had a NOD for the Larkflower property recorded in Placer County. (ECF # 179, #2 Dcln. Michael Dolan, ¶ 28; Exhibit V). (Apndx. 6)

On October 4, 2010, Becker sent a letter to Wachovia requesting reports allowed by Cal. Civ. Code § 2943. Wachovia did not provide all the information requested by Becker within the time allowed, causing Becker damage. (ECF # 19; ¶¶ 169 - 178; ¶¶ 281 - 288).

On October 15, 2010, Wells Fargo filed a notice of removal (ECF #1).

On October 25, 2010, Wells Fargo filed a motion to dismiss (ECF # 7). The motion was defectively noticed and was not set for hearing (ECF # 9). On October 27, 2010, Wells Fargo filed an amended motion to dismiss (ECF # 11).

On November 4, 2010, Becker filed a motion for leave to file a First Supplemental Complaint (ECF # 13) as a matter of course pursuant to Federal Rule of Civil Procedure 15. The motion was denied and the court ordered Becker to file a FAC by 12/10/2010. Becker filed his FAC on 11/29/2010 (ECF # 19).

On September 9, 2014, the district judge issued an order adopting the magistrate judge's finding and recommendations (ECF # 197) in full and granted Wells Fargo's motion for summary judgment (MSJ) (ECF #'s 202 and 203).

On September 15, 2014, Becker filed a timely notice of appeal (ECF # 204). The appeal concerning the MSJ is currently before this Court (Court of Appeals Docket # 14-16783). The appeal has been fully briefed.

On October 22, 2014, Wells Fargo was awarded costs of $4,471.64 (ECF # 221).

On November 6, 2014, Wells Fargo had Becker's 865 Shelborne Drive, Tracy, CA property sold at a Trustee's Sale.

7

On November 12, 2014, Wells Fargo had Becker's 2416 3RD Street, Lincoln, CA property sold at a Trustee's Sale.

On February 5, 2015, the district judge granted Wells Fargo's motion for attorney fees. (ECF # 227).

On February 13, 2015, Becker timely filed a notice of a appeal (ECF # 229). The appeal concerning the award of attorney fees is currently before this Court (Court of Appeals Docket # 15-15322). The appeal has been fully briefed.

On August 18, 2015, the below court granted Wells Fargo's motion for the disbursement of preliminary injunction bond funds (ECF # 264). On August 26, 2015, Becker filed a timely appeal (ECF # 265).

## 5.  <u>SUMMARY OF THE ARGUMENT</u>

### A. HOLA Does Not Apply To Becker's Claims

There is a divergence of opinion at the district court level concerning HOLA applicability. Some district courts have held that if a loan originated with a Federal Savings Bank  (FSB), then claims, no matter when they occurred are covered by HOLA. Other district courts have determined that if claims occur after a loan was acquired by a National Association (NA), than HOLA is not applicable. The latter is the more reasoned opinion.

Since HOLA does not apply to Becker's claims, the below court erroneously dismissed several of Becker's FAC and TAC claims. The below court erroneously dismissed Becker's FAC fifth claim based on California Civil Code § 2943 (ECF 19; ¶¶ 281 - 288); sixth claim for wrongful foreclosure (ECF 19; ¶¶ 289 - 304), and seventh claim for quiet title (ECF 19; ¶¶ 305 - 307). The below court erroneously dismissed Becker's TAC fifth claim for preempted/unlawful foreclosure (ECF # 98; ¶¶ 73 - 80) and sixth claim for improper foreclosure process (ECF # 98; ¶¶ 81 - 89).

## B. HOLA Does Not Preempt California's Commercial, Criminal, or Contract Laws

Even if HOLA applied to Becker's claims, HOLA does not preempt California's Commercial, Criminal or Contract laws. Yet, the below court dismissed with prejudice Becker's FAC and TAC claims based on these laws.

Becker's FAC sixth and seventh claims are based on commercial law. Becker's TAC fifth claim is based on contract law. Becker's TAC sixth claim is based on criminal law.

///

///

9

## C. Certain FAC and TAC Claims Should Not Have Been Dismissed With Prejudice

Based on the above, Becker's FAC fifth claim based on California Civil Code § 2943, sixth claim for wrongful foreclosure, seventh claim for quiet title and his TAC fifth claim for preempted/unlawful foreclosure and sixth claim for improper foreclosure process should not have been dismissed with prejudice and without leave to amend.

The claims would have prevented non-judicial foreclosure and justified the preliminary injunction.

## 6. ARGUMENT

**Review Record:** The district court record includes ECFs 15; 19; 26; 28; 41; 42; 43; 44; 49; 50; 54; 55; 58; 59; 73; 78; 79; 81; 82; 85; 86; 87; 98; 115; 123; 151; 154; 202; 224; 227; 260; 261; 262; 263; 264

**Review Standard:** "Questions of statutory interpretation are reviewed de novo, as are questions of preemption." *Lopez v. Wash. Mut. Bank*, 302 F.3d 900, 903 (9th Cir. 2002). An order granting or denying a FRCP 12(b)(6) motion to dismiss for failure to state a claim is reviewed de novo (*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F3d 1025). Dismissal of a pro se complaint without leave to amend is proper only if it is "absolutely clear that the deficiencies of the complaint could not

be cured by amendment." *Lucas v. Department of Corrections*, 66 F3d 245, 248 (9th Cir. 1995). Also, *Flowers v. First Hawaiian Bank*, 295 F3d 966, 976 - "We are very cautious in approving a district court's decision to deny pro se litigants leave to amend."

## A.    HOLA Does Not Apply To Becker's FAC and TAC Claims

The magistrate judge recommended that Wells Fargo's motion for the disbursement of preliminary bond funds be granted (ECF # 260). Becker objected (ECF # 261) and argued that HOLA does not apply to his claims (ECF # 261; 1:17 - 4:3) Becker argued that pursuant to *Robins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007), "However, the failure to object to a magistrate judge's conclusions of law does not automatically waive a challenge on appeal."

Becker also argued that he has consistently objected to the magistrate judge's and the district judge's findings of fact and conclusions of law concerning the HOLA preemption of Becker's claims. Becker made the new argument to the below court that there is a growing and significant divergence of opinion at the district court level concerning when HOLA is applicable. Some district courts have held that if a loan originated with a Federal Savings Bank  (FSB), then claims, no matter when they occurred are covered by HOLA. Other district courts have determined

that if claims occur after a loan was acquired by a National Association (NA), than HOLA is not applicable. This is the more reasoned conclusion.

In *Pimentel v. Wells Fargo, N.A.,* 2015 WL 2184305 ( N.D. Cal. May 7, 2015), Wells Fargo cited cases holding that HOLA preemption "attaches to a loan, and continues with that loan throughout its lifetime," even if the loan is transferred to a bank not covered by HOLA. The *Pimentel* (*id.*) Court rejected the argument stating:

> However, these cases do not appear to have grappled in a substantive way with the question of whether HOLA preemption extends to claims against a national bank based on its own conduct that post-dates its merger with a federally charted savings bank, and the Court is more persuaded by the reasoning of a growing trend of cases going the other way and holding that HOLA preemption does not apply to such claims.

Wells Fargo also relied on a 1985 Federal Home Loan Bank Board regulatory opinion and on a 2003 opinion letter from the Office of Thrift Supervision to support its position. The district court considered the documents and rejected Wells Fargo's argument.

Finally, Wells Fargo relied on the loan documents themselves to support its position that HOLA preemption applies. Wells Fargo pointed to language in the loan documents stating that they are to be "governed by and construed under federal law and federal rules and regulations, including those for federally

chartered savings institutions." The *Pimentel* (*id.*) Court rejected this argument

stating, inter alia:

> The contractual provisions relied on by Wells Fargo support the notion
> that "HOLA preemption applies where the allegations concern actions taken
> by a federal savings association or bank, even if that federal savings
> association is later acquired by a national bank." *Penermon*, <u>47 F.Supp.3d at
> 995</u>. However, this Court disagrees with cases that extend this conclusion to
> apply HOLA preemption to Wells Fargo's own post-merger conduct.

The *Pimentel* (*id.*) Court concluded, "So, while Wells Fargo does inherit the

liabilities and possible defenses that Wachovia could raise about its own conduct,

Wells Fargo itself cannot violate state laws when servicing loans that were

originated by an entity regulated by HOLA."

In *Pereremon v. Wells Fargo Bank,* N.A. 47 F.Supp.3d 982 (N.D. Cal. June 11,

2014) the court stated:

> Essentially, since "preemption is not some sort of asset that can be
> bargained, sold, or transferred," *Gerber,* <u>2012 WL 413997, at *4</u>, courts look
> to the "nature of the alleged claims that are the subject of the suit ... [World
> Savings Bank's] conduct before its merger with Wells Fargo on *November 1,
> 2009* would be governed by HOLA where appropriate, while Wells Fargo's
> own conduct after that date would not." *Rijhwani,* <u>2014 WL 890016 at
> *7</u> (quoting *Rhue,* <u>2012 WL 8303189, at *3</u>).

The *Peremon* (*id.*) Court also analyzed court opinions that held that HOLA

applied to Wells Fargo's actions subsequent to November 1, 2009, and stated:

> The cases cited are largely unanchored by statutory analysis or legal
> reasoning, and generally provide legal conclusions without analyzing their
> holdings by citing either "(a) nothing, (b) each other, or (c) generic

statements of law about corporations succeeding to the rights of the entities they acquire." *Gerber,* 2012 WL 413997, at *4. In essence, the cases Defendant cites shield national banks such as Wells Fargo, even though they are not federal savings banks, by simply concluding that an automatic HOLA preemption applies to loans originated by a federal savings bank. This Court has similarly found that HOLA preempted causes of action for wrongful foreclosure when the conduct complained of occurred at the time of origination. *See, e.g., McDonald v. Wells Fargo Bank, N.A.,* CV 13–02334–KAW, 2013 WL 6512881, at *6 (N.D.Cal. Dec. 12, 2013) (pre-HBOR case finding HOLA preemption for allegedly fraudulent conduct at the time of loan origination). It is true that many courts in this district, including this one, have determined that "the status of the originator of the loan determines the applicability of HOLA to a particular loan."*See Rijhwani,* 2014 WL 890016, at *6. In the majority of those cases, however, "the plaintiffs either failed to argue otherwise or conceded the issue, the upshot being that the courts never had to grapple with it; instead, the courts simply concluded, without much analysis, that HOLA preemption applied." *Id.* (citing *Pratap v. Wells Fargo Bank, N.A.,*C 12–06378 MEJ, 2013 WL 5487474, at *3–5 (N.D.Cal. Oct. 1, 2013); *Graybill v. Wells Fargo Bank, N.A.,* 953 F.Supp.2d 1091, 1109 (N.D.Cal.2013); *Preciado v. Wells Fargo Home Mortgage,* No. 13–00382 LB, 2013 WL 1899929, at *3–4 (N.D.Cal. May 7, 2013); *Plastino v. Wells Fargo Bank,* 873 F.Supp.2d 1179, 1184 n. 3 (N.D.Cal.2012); *Appling v. Wachovia Mortg., FSB,* 745 F.Supp.2d 961, 971 (N.D.Cal.2010); *DeLeon v. Wells Fargo Bank, N.A.,* 729 F.Supp.2d 1119, 1126 (N.D.Cal.2010).)

In their response to plaintiff's objections (ECF # 262) Wells Fargo did not

refute Becker's argument or argue that HOLA applies to Becker's claims. Instead,

Wells Fargo argued that Becker has made his HOLA argument on appeal so that

the district court has no jurisdiction to consider them (ECF # 262; 2:20-27).  In his

response, Becker argued (ECF # 263; 2:13-15):

> As Wells Fargo has noted, Becker's appeals raise issues concerning the preliminary injunction. Becker has argued that the preliminary injunction was appropriate based on this Court's erroneous conclusion that HOLA was applicable to his complaint.

Becker argued that since his appeals raised issues concerning the preliminary injunction, pursuant to *Russell Road Food & Beverage, LLC v. Galam*, 2013 WL 2949615 (D. Nev. June 13, 2013), (ECF # 263; 2:1 - 3:20) "Vacating or modifying the injunction in the manner requested by defendants would significantly alter the status quo and adjudicate the precise issue on appeal."

The district judge adopted the magistrate judge's proposed findings and recommendations but did not specifically discuss Becker's or Wells Fargo's arguments (ECF # 264).

Based on the detailed analyses in *Pimentel v. Wells Fargo, N.A.,* 2015 WL 2184305 (supra) and *Penermon v. Wells Fargo Bank, N.A.* 47 F.Supp.3d 982 (supra), claims against Wachovia/Wells Fargo that occurred after November 1, 2009 are not preempted by HOLA. All of Becker's claims are based on actions by Wells Fargo that occurred after November 1, 2009.

## B. HOLA Does Not Preempt California's Commercial, Criminal, or Contract Laws

Even if HOLA applied to Becker's claims, HOLA does not preempt California's Commercial, Criminal or Contract laws. Yet, the below court dismissed with prejudice Becker's FAC and TAC claims based on these laws by concluding that the California Commercial Code is preempted.

12 CFR §560.2(c) defines state laws that are not preempted including (1) Contract and commercial law; and (5) Criminal law. Despite 12 CFR §560.2(c)(1), the below court dismissed several of Becker's claims because they determined that the provisions of the California Commercial Coded was preempted based on 12 CFR §560.2(b)(10) "Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages."

Becker argued in vain several times that mortgages are not notes and the California Commercial Code pertains to notes and not mortgages.

The OTS did not intend that commercial laws such as the California commercial Code would be preempted. This is well explained in "Preemption of State Laws Applicable to Credit Card Transactions" ¶ IIC (Opinion of OTS Chief Counsel, Dec. 24 1996, 1996 WL 767462): "The OTS has indicated, however, that it does not intend to preempt state laws that establish the basic norms that undergird commercial transactions ..." (Addendum 2).

In their "OTS, Final Rule 61 Fed.Reg. 50951, 50966-67 (Sep. 30, 1996) concerning 12 CFR §560.2(c)  the OTS stated (Addendum 3, p. 0015):

> OTS believes that paragraph (c) should be retained in order to provide guidance regarding the scope of preemption intended by paragraph (a). OTS wants to make clear that it does not intend to preempt basic state laws such as state uniform commercial codes and state laws governing real property, contracts, torts, and crimes.

Neither the below court not Wells Fargo argued that state laws governing contracts or crimes were preempted. However, as discussed infra, the below court erroneously denied with prejudice Becker's claims related to the commercial code, contract law, and crime.

## C. Certain FAC and TAC Claims Should Not Have Been Dismissed With Prejudice

Based on the above, Becker's FAC fifth claim based on California Civil Code § 2943, sixth claim for wrongful foreclosure, seventh claim for quiet title and his TAC fifth claim for preempted/unlawful foreclosure and sixth claim for improper foreclosure process should not have been dismissed with prejudice and without leave to amend.

### a.    FAC Claims

#### (1)    Wachovia Extinguished Becker's Loan Obligations

Becker's fifth FAC claim is based on Cal. Civ. Code § 2943 (ECF # 19; FAC ¶¶ 281 - 288). The facts leading to this claim did not start until October 4, 2010, well after Wachovia Mortgage, FSB converted to Wells Fargo Bank, N.A. on November 1, 2009 (Apndx. 3). Therefore, HOLA does not apply to this claim. Cal. Civ. Code § 2943 does not conflict with federal laws and regulations. Based solely on HOLA, the magistrate judge recommended dismissal of this claim without

leave to amend (ECF # 49; p. 25: 11 - 26:4). The magistrate judge found no other justifying reasons to dismiss this claim. Becker objected to the magistrate judge's findings and recommendations (ECF # 50) but did not argue that HOLA did not apply because the case law finding that HOLA did not apply had not yet developed and there was no Ninth Circuit decisions concerning the issue. The district judge adopted the F&R (ECF # 58).

In his October 4, 2010, letter to Wachovia (ECF # 19; FAC ¶ 283), Becker stated that the letter was a request pursuant to Section 2943 and asked for a "Beneficiary Statement", "payoff demand statement" and copies of the deeds of trust (DOT) for the Shelborne, 3RD Street, and Larkflower properties. Becker would have accepted the DOTs as proof of indebtedness. Becker needed this proof because he did not believe that the Defendants owned his loans (ECF # 19; FAC ¶ 304).

Had Becker been allowed to amend this claim, he would have alleged that he sent his October 4, 2010, letter to the address identified in the monthly mortgage statement, that he included his check number 6734 in the amount of $180 to pay for the statements, and that his letter was received by Wachovia before the first publication of a notice of sale. Becker would have alleged that Wachovia willfully failed to prepare and deliver the Shelborne payoff information and the DOTs for the three properties because they cashed his check on October 7, 2010, but did not

18

provide all the information. Also, Wachovia asked for a written and signed request even though Becker's letter was signed and included an acknowledgment as proof for his signature. Becker would have alleged that he had the funds to pay off the three loans and would have paid off the loan within days after Wachovia provided the information he requested and the loans would have been paid off by November 4, 2010. Becker did ask for statutory damages in his claim.

Becker would have also alleged that on December 1, 2010, he sent a letter, pursuant to Cal. Civ. Code § 2943, signed and notarized, to the address listed in the monthly mortgage statement, requesting evidence of indebtedness, a copy of the note with any modification thereto, payoff statements, a copy of the deed of trust, and a beneficiary statement for his 80 # 117 Portola Way, Tracy, CA; 80 # 118 Portola Way, Tracy, CA; 228 Quarry Stone Way, Manteca, CA; 434 Walnut Ave., Manteca, CA; and 814 Debra Street, Livermore, CA loans (Exh. 2). Becker included his check number 6798 in the amount of $180 to pay for the reports. Since the loans were not in default, there was no Notice of Default for the loans. Becker would have alleged that the Defendants did not provide the information.

Becker would have alleged that Wachovia willfully failed to prepare and deliver the information he requested for the six properties because Becker included a check for the information and an acknowledgment as proof for his signature. Becker would have alleged that he had the funds to pay off the six loans and would

19

have paid off the loan within days after Wachovia provided the information he requested and the loans would have been paid off by January 1, 2011. Becker would have also alleged that he was entitled to the statutory damages provided for in Section 2943.

Becker would have alleged that on July 8, 2011 , he sent a letter, pursuant to Cal. Civ. Code § 2943, to the address listed in the monthly mortgage statement, requesting evidence of indebtedness, a copy of the note with any modification thereto, payoff statements, a copy of the deed of trust, and a beneficiary statement for his 80 # 117 Portola Way, Tracy, CA; 80 # 118 Portola Way, Tracy, CA; 228 Quarry Stone Way, Manteca, CA; 434 Walnut Ave., Manteca, CA; and 814 Debra Street, Livermore, CA loans. Becker included his check number 7021 in the amount of $180 to pay for the reports (Exh. 3). Since the loans were not in default, there was no Notice of Default for the loans. Becker would have alleged that the Defendants did not provide the information within the 21 day limit of Section 2943.

Becker would have alleged that on September 7, 2011, Wachovia sent him six letters, one for each property, that enclosed the note and deed of trust for each property but none of the other information he requested. The letter also stated that Becker's July 8, 2011, letter was received on July 28, 2011, and that any information not provided was because the request was too broad or are considered

to be proprietary information of Wachovia and will not be provided at this time without a subpoena. (Exh. 4 and Exh. 5 - Letter for the Debra Street property)[1,2].

Becker would have alleged that Wachovia willfully failed to prepare and deliver the information he requested for the six properties because the copy of the July 8, 2011 letter Becker received from Wachovia in response to a discovery request for documents (Exh. 3) shows that the letter was received and stamped by Wells Fargo on July 12, 2011, and was also stamped "Mail Workflow, July 25, 2011. The statement that Becker's letter was not received until July 28, 2011, is a willful misrepresentation. Becker would have alleged that the notes provided were not indorsed or in any way marked to indicate they were assigned or transferred to either Wachovia or Wells Fargo and are not evidence of indebtedness to them. Becker would have argued that the information he requested was specific and not the proprietary information of the Defendants and therefore, Wachovia's failure to provide the information was willful. Also, Becker included a check for the information and, again, Wachovia's failure to provide the information was willful.

---

[1] Exhibit 4 is Wells Fargo Bates stamped pages WF007248 - 007277 provided for document production. It includes the September 7, 2011 letter concerning 814 Debra Street, two copies of Becker's July 8, 2011 letter, the 434 Walnut Ave. note, and the 434 Walnut Ave. Deed of Trust. For their document production, Wells Fargo shuffled unrelated documents together.
[2] Exhibit 5 is Becker Bates stamped pages 003925 - 003956 provided for document production. It is a true copy of the September 7, 2011 letter concerning 814 Debra Street, including the blank pages, sent to Becker by Gustavo Rodriguez.

Becker would have also alleged that he was entitled to the statutory damages
provided for in Section 2943.

Becker would have alleged that he had the funds to pay off the six loans and
would have paid off the loan within days after Wachovia provided the information
he requested and the loans would have been paid off by August 8, 2011.

Becker made some, but not all of these allegations in his TAC third claim for
violation of 12 U.S.C. § 2605 because willful failure is not an element of failure to
provide information for a 12 U.S.C. § 2605 claim (ECF # 98; TAC ¶¶ 58-64).

Becker would have argued that pursuant to *Bruntz v. Alfaro*, 212 Cal.App.3d
411 (July, 1989):

> Plaintiff was wrong; defendants were entitled to cure any default by payment
> of the sums due under the note with attorney's fees and costs as limited
> by Civil Code section 2924c, and thus the onus of the refused tender falls
> upon plaintiff. Civil Code section 1504 provides: "An offer of payment or
> other performance, duly made, though the title to the thing offered be not
> transferred to the creditor, stops the running of interest on the obligation, and
> has the same effect upon all its incidents as a performance
> thereof." **CivilCode section 1512** provides: "If the performance of an
> obligation be prevented by the creditor, the debtor is entitled to all the
> benefits which he would have obtained if it had been performed by both
> parties."
>
> When plaintiff brought the action for foreclosure, defendants were entitled,
> pursuant to Civil Code section 2924c, subdivision (a), to cure any alleged
> default and to reinstate the loan, and to obtain dismissal of the foreclosure
> action, by paying all amounts then due under the secured note with fees and
> costs as limited by subdivisions (c) and (d). Defendants' efforts to tender
> these sums were wrongfully refused by plaintiff. Nevertheless, defendants

were entitled to the incidents and benefits of performance, including dismissal of the foreclosure action. Accordingly, even if defendants were initially in default under the Zimmerman–Green note and deed of trust, the default was cured and defendants were entitled to dismissal of the foreclosure cause of action.

Also, pursuant to *City of Hollister v. Monterey Insurance Co*., 165 Cal.App.4th

455 (July, 2008):

It is hornbook law that where one contracting party prevents the other's performance of a condition precedent, the party burdened by the condition is excused from performing it, and the benefited party's duty of performance becomes unconditional. (1 Witkin, *supra,* Contracts, § 821, pp. 910–911; 14ACal.Jur.3d (2008) Contracts, § 357, pp. 279–280; *Houghton v. Steele* (1881) 58 Cal. 421, 424; see Civ.Code, § 1511, subd. (1) [want of performance of contractual obligation is excused when it is "prevented or delayed by the act of the creditor"]; *id.,* § 1512 ["If the performance of an obligation be prevented by the creditor, the debtor is entitled to all the benefits which he would have obtained if it had been performed by both parties"].) But the law does not merely prohibit a contracting party from *actively interfering* with the other's performance of a condition; it may also impose a duty to *affirmatively cooperate* in that performance. If one party's cooperation is "necessary for successful performance" by the other, the contract will generally be held to include an implied obligation to "give that cooperation," as well as to refrain from doing "anything that prevents realization of the fruits of performance...." (1 Witkin, *supra,* Contracts, § 798, p. 892.)

Becker would have also argued that pursuant to Cal. Civ. Code §§ 1511and

1512, that since he would have paid off the Shelborne, Larkflower, and 3 RD

Street loans within a few days after receiving the Shelborne payoff statement and

the three DOT's, the three loan obligations were extinguished on about November

4, 2010, because Wachovia prevented or delayed Becker's performance. Paying off

the loans would have also cured the default. In addition, the law, Section 2943,

imposed a duty on Wachovia to affirmatively cooperate and provide the

information Becker needed to bring the loans out of default and pay them off (*City*

*of Hollister* v. *Monterey Insurance Co*., *id*.).

Wachovia received the request on October 6, 2010 (ECF # 19; FAC ¶ 169).

They had to send the payoff statement by October 27, 2010. Becker would have

provided a cashier's check to extinguish the loans before November 4, 2010. Also,

in his claim, Becker asked for statutory damages allowed by § 2943.

There is also recent dicta relating to Plaintiff's claim concerning Civil Code

Section 1511. Pursuant to *Boring v. Nationstar Mortgage, LLC*, 2014 WL 5473118

(E.D. Cal. Oct., 2014):

> "The want of performance of an obligation ... is excused ... [w]hen the
> debtor is induced not to make it, by any act of the creditor intended or
> naturally tending to have that effect, done at or before the time at which such
> performance or offer may be made, and not rescinded before that
> time." **Cal. Civ.Code § 1511**(**3**).

Pursuant to *Chaghouri v. Wells Fargo Bank, N.A.,* 2015 WL 65291 (N.D. Cal.,

January 5, 2015):

> The allegations are sufficient to state a claim based on Wells Fargo's unfairly
> interfering with Plaintiff's performance under, and her enjoyment of the
> benefits of, the deed of trust. *See Harvey v. Bank of Am., N.A.,* No. 12–3238
> SC, 2013 WL 632088, at *3 (N.D.Cal. Feb. 20, 2013) (bank's conduct in
> inducing defendant to stop payments under a deed of trust in order to be
> considered for a loan modification "hindered his ability to make payments
> under the portion of the DOT that required him to do so" and stated claim
> for breach of an implied covenant); *see also* **Cal**. **Civ**. **C**. **§ 1511** ("want of

performance of an obligation, or of an offer of performance, in whole or in part, or any delay therein, is excused by the following causes ... [w]hen the debtor is induced not to make it, by any act of the creditor intended or naturally tending to have that effect.")

In these cases the plaintiff stated a claim for excusing the want of performance under Cal.Civ.C § 1511(3). Here, Plaintiff has alleged facts that excuse his want of performance under Cal.Civ.C § 1511(1).

Similarly, Becker would have argued that the loans for his other six properties were extinguished on January 1, 2011, and again on August 8, 2011.

During discovery Becker provided financial statements showing he had the funds and testimony he had the intent to pay off the loan if he would have received the requested information.

Becker would have argued that foreclosure attempts subsequent to November 4, 2010, were wrongful. Pursuant to *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112*:*

> To obtain the equitable set aside of a trustee's sale or maintain a wrongful foreclosure claim, a plaintiff must allege that (1) the defendants caused an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a power of sale in a mortgage or deed of trust; (2) the plaintiff suffered prejudice or harm; and (3) the plaintiff tendered the amount of the secured indebtedness or was excused from tendering. Recognized exceptions to the tender rule include when: (1) the underlying debt is void, (2) the foreclosure sale or trustee's deed is void on its face, (3) a counterclaim offsets the amount due, (4) specific circumstances make it inequitable to enforce the debt against the party challenging the sale.

Also, pursuant to *Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250, tender is not due if the foreclosure sale has not yet occurred.

Becker would have argued that since the loan obligations for the three properties in default were extinguished on November 4, 2010, and the defaults were cured, foreclosure was illegal, fraudulent, or willfully oppressive pursuant to the power of sale in the deeds of trust. Foreclosure would cause Becker harm because he would lose the equity in the properties and rental income. Becker would have argued that tender was not due because the foreclosure sales had not occurred, the loan obligations were extinguished so the debt was void, and since the obligations were extinguished, it would be inequitable to enforce the debt.

Becker would have argued that since the loan obligations were extinguished, the foreclosure documents are malicious and not protected by Civil Code § 2924(d) or Civil Code § 47.

Becker's claim based on Section 2943 was erroneously dismissed with prejudice because the below court erroneously applied HOLA preemption to the claim. The below court did not find amendment to this claim would be futile for any other reason. Had Becker been allowed to amend his claim, he would have stated a claim for which relief could have been granted and which justified the preliminary injunction. Wells Fargo would not have prevailed with their motion for summary

26

judgment and Wells Fargo would not have been able to argue they were wrongfully enjoined by the preliminary injunction.

Cal. Civ. Code § 2943 is not in conflict with federal statutes or regulations. In fact, Cal. Civ. Code § 2943 is similar to 12 U.S.C. § 2605 in nature and scope. Cal. Civ. Code § 2943 is not preempted by the National Bank Act.

### (2) Neither Wachovia nor Wells Fargo Owns Plaintiff's Notes so Foreclosure is Wrongful

As the beneficiary under the deeds of trust, Wells Fargo initiated non-judicial foreclosure on Becker's Shelborne, Larkflower, and 3RD Street properties in September and October of 2010, long after the conversion of Wachovia Mortgage, FSB to Wells Fargo Bank, N.A. Thus, HOLA does not apply to Becker's sixth FAC claim for wrongful foreclosure.

Becker originated the nine loans that are the subject of his complaint with World Savings, FSB. Based on Wachovia's 2006 Annual Report, filed with the Securities and Exchange Commission, Wachovia purchased Golden West Financial, the sole owner of World Savings, for $24.3 billion on December 31, 2006. Based on Wells Fargo's 2009 Annual Report, Wells Fargo purchased Wachovia for $23.1 billion on December 31, 2008. Because there were purchases

of assets, including promissory notes for California property, the purchase of Becker's notes is governed by the California Commercial Code.

Becker alleged that Wachovia purchased Golden West Financial (ECF # 19; FAC ¶ 2), and that Wells Fargo purchased Wachovia (ECF # 19; FAC ¶ 3). Plaintiff alleged that World Savings was wholly owned by Golden West Financial (ECF # 19; FAC ¶ 21).

In his FAC sixth claim for wrongful foreclosure, Becker gave Wells Fargo fair notice that foreclosure was wrongful because neither Wachovia nor Wells Fargo was the holder of his notes and only the holder of a note can enforce it stating (ECF # 19; 94:2-6):

> Since neither the notes nor deeds of trust have been appropriately assigned to WACHOVIA or WELLS FARGO, the contemplated foreclosure sale at issue could not be conducted properly under the current statutory regime and the terms of the Deed of Trust.

Becker also argued (ECF # 19; ¶¶ 301 - 304) stating, inter alia:

> Also, there is a question of who legally had the power to begin the foreclosure on the three properties. Only the current mortgagee, beneficiary, properly substituted trustee or their authorized agents can initiate the foreclosure under California law and only a current beneficiary can declare a default and communicate such default to the trustee conducting a sale. WELLS FARGO, WACHOVIA, and Cal-Western Reconveyance Corporation are none of the above.

In their motion to dismiss (ECF # 26; p. 18 - 21) Wells Fargo admitted that there was never an assignment of the notes from World Savings Bank, FSB to any

other entity (ECF # 26; 18: 14 - 16). Wells Fargo did not deny that the purchase of World Savings by Wachovia and the purchase of Wachovia by Wells Fargo is governed by the California Commercial Code. Instead, Wells Fargo argued that their corporate succession documents showed there were mergers and in a merger the surviving entity "succeeds to the rights, property, debts, and liabilities, without other transfer." Wells Fargo submitted their corporate succession documents in a RJN (ECF # 28). Wells Fargo did not argue that the California Civil Code is preempted by HOLA (ECF # 26; p. 3-8).

Becker argued that his wrongful foreclosure claim could be amended to state a valid claim (ECF # 41; p. 6-16). Becker argued that there were purchases and mergers so that the California Commercial Code governed the transfer of his notes. Becker did a HOLA analysis and showed the Commercial Code was not preempted by HOLA. Becker argued that documents filed by the Defendants with the SEC showed that from December, 2006 through June, 2009, the Defendants sold over half the portfolio that included Becker's loans making it plausible the Defendants did not own his notes when they initiated the foreclosure process. Becker summarized his argument by explaining how he could amend his claim to overcome Wells Fargo's arguments (ECF # 41, 14:22 - 16:2). Becker's RJN (ECF # 43) included the documents the Defendants filed with the SEC.

In their reply (ECF # 44; 2:16 - 4:8), the Defendants did not argue that HOLA preempted Becker's wrongful foreclosure claim. They argued that there was no assignment of the DOT's and that Becker had to allege tender (ECF # 44; 6:26-7:11).

The magistrate judge recommended that Becker's claim be dismissed because the requirement to record documents is preempted by HOLA. The magistrate judge denied Becker's RJN because the documents did not reference Becker's loans in particular (ECF # 49; 43:14-22).

Becker objected to the magistrate judge's F&Rs (ECF #50). Becker argued that his RJN was relevant to his claim because the documents show the Defendants sold 55% of the loan portfolio, that included his loans, before they started non-judicial foreclosure on his loans. Becker argued that it was wrong for the magistrate judge to deny the RJN based on the fact that the documents did not specifically mention his loans. Becker argued that it would have been a practical impossibility to specifically list 420,000 loans in documents filed with the SEC. The important point is that the documents establish that it was plausible (*Twombly*, 550 U.S. 544 and *Iqbal*, 129 S.Ct. 1937) the Defendants sold his loans and Becker requested leave to amend his complaint (ECF #50; 2:1- 6:23 and 7:25 - 9:13).

In their reply, the Defendants argued that Becker's RJN should not be granted and that ownership of the note in question has nothing to do with the propriety of a foreclosure sale (ECF # 54; p.2). Becker refuted the Defendants' arguments by stating that his RJN contained documents relevant to his claim and that are easily verifiable. Becker also argued that the Defendants' citation was not on point (ECF # 55).

In his order, the district judge noted that Becker requested leave to amend several claims to include allegations that defendants are not the holders of his notes and that they have no right to foreclose because they do not own his loans. The judge found that HOLA preempts such claims based on 560.2(b)(10), "sale, transfer, acquisition, and/or investment in Plaintiff's mortgages (ECF # 58; 2:25-4:5).

Becker filed a motion for reconsideration (ECF # 59) arguing that he sought leave to amend his claim based on the California Commercial Code which is not preempted by HOLA. The Defendants argued that Becker failed to show that the judges' findings and orders were erroneous (ECF # 73). In his reply (ECF # 78), Becker argued that OTS knows the difference between a note and a mortgage and would have included notes in Section 560.2(b) if they wanted to preempt the Commercial Code. Becker argued that his RJN (ECF # 43) was relevant to his argument that the Defendants did not own his notes. Becker again requested leave

to amend his complaint to allege that the Defendants are not the holder of his notes.

The district judge ordered additional briefs on preemption (EFC # 81). The Defendants argued that HOLA applies to loans made by FSBs even if the FSB later merges into a national bank (ECF # 85; p.3) and that even if HOLA did not apply, 12 C.F.R. § 34.4(a) would preempt Becker's claims (ECF #85; p.5). As discussed supra, recent district court opinions have dismissed Wells Fargo's arguments that HOLA applies to loans made by FSBs after an FSB merges into a national bank.

In their brief, Wells Fargo noted that 12 C.F.R. § 34.4(a) is based on conflict preemption but did not argue that the Commercial Code conflicts with federal law or frustrates the purpose of the National Bank Act. It does not.

In his brief (ECF #86), Becker mistakenly argued that HOLA applied to his complaint because of provisions in the notes and DOTs. As discussed supra, recent district court opinions have dismissed this argument. Becker argued that neither HOLA nor 12 C.F.R. §34.4 preempt his claims (ECF #86; p.3-5) and requested leave to amend his complaint based on alleged facts that defendants are not holders of his notes and/or not entitled to enforce his notes.

The district judge denied Becker's motion for consideration because nothing in Becker's motion established error in the court's reading of Section 560.2(b)(10) to

preempt claims based upon the "'sale, transfer, acquisition, and/or investment of Plaintiff's mortgages.'" (ECF # 87). Significantly, the court did not conclude that mortgages are the same as notes and that the California Commercial Code is preempted. Also, as discussed supra, HOLA did not apply to Becker's complaint in general and specifically did not apply to his claim for wrongful foreclosure. For these reasons, the below court erroneously dismissed the claim for wrongful foreclosure without leave to amend.

Had Becker been allowed to amend his claim, he would have argued that since Wachovia purchased Golden West Financial and Wells Fargo purchased Wachovia, the California Commercial Code was applicable to the transfer or assignment of his notes which are for property in California. The corporate succession documents relied upon by Wells Fargo to establish loan ownership do not. It is the California Commercial Code that provides the procedures for establishing note ownership.

*In re Kang Jin Hwang, Debtor*, 2008 WL 4899273 (Bkrtcy.C.D.Cal.) the court stated:

> In the United States, the law of promissory notes is not unified at the federal level. Instead, each state has its own law on promissory notes. However, every state has adopted a version of the UCC to govern negotiable promissory notes. Thus, we turn to the California Commercial Code ("CComC"), the California version of the UCC.
> 1.      Relevant Law of Negotiable Instruments
> The substantive California law that governs negotiable instruments is CComC Division 3 (the California version of UCC Article 3) *See* CComC §3102(a). A negotiable instrument (or more briefly, for

Division 3 purposes, an "instrument") typically takes one of two forms: a promissory note (designated as a "note"), or a draft (such as a check). This case involves a note secured by a deed of trust.

An instrument (including a secured note) may only be enforced by the "holder" of the note (with minor exceptions not relevant to this case). *See* CComC §3301(a): UCC §3-301(a). For an instrument payable to an identified person (such as the note in this case), there are two requirements for a person to qualify as a holder: (a) the person must be in possession of the instrument, and (b) the instrument must be payable to that person. *See* CComC §1201(20); UCC §1-201(20). The payee of an instrument may negotiate it by indorsing it and delivering it to another person, who then becomes its holder (and entitled to enforce it. Commercial Code § 3201 (UCC §3-201) defines "negotiation" as follows:

(a) "Negotiation" means a transfer of possession … of an instrument by a person other than the issuer to a person who thereby becomes its holder.

(b) …[I]f an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder. If an instrument is payable to bearer, it may be negotiated by transfer of possession alone.

A fundamental feature of negotiable instruments is that they are transferred by the delivery of possession, ***not by contract or assignment***. The transfer of an instrument "vests in the transferee any right of the transferor to enforce the instrument…" CComC §3203(b); UCC §3-203(b). Thus, the right to enforce a negotiable instrument is only transferable by delivery of the instrument itself. CComC §3203; UCC §3-203. (Emphasis by plaintiff)

The transfer of a negotiable instrument has an additional requirement: ***the transferor must indorse the instrument to make it payable to the transferee***. *See* CComC §3205(a); UCC §3-205(a). (Emphasis by plaintiff)

Becker would have argued that in *Pribus v. Bush*, 118 Cal.App.3d 1003, 1009-1010 (1981), the court found that an indorsement that transfers the note must be on the note where there is room on the note.

34

The notes provided by Wells Fargo to the below court to establish their ownership and right to foreclose are not indorsed in any manner. See Appendix 1, Exhibits H, I, and J. Wells Fargo has not provided any evidence that complies with either Section 3 or Section 9 of the California Commercial Code to show that either Wachovia or Wells Fargo purchased, acquired, was the transferee, became the payee or obtained a beneficial interest in the subject loans.

Pursuant to *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112(supra) and *Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250 (supra), Becker would have alleged that since the Defendants did not own his notes they were not the mortgagee under the note or the beneficiary under the deed of trust and did not have the authority to substitute Cal-Western Reconveyance LLC as the trustee. Since Cal-Western Reconveyance LLC was not the trustee, the attorney for the trustee, or a duly authorized agent, they did not have authority to conduct a sale pursuant to Cal. Civ. Code § 2924a. Therefore, the Defendants were causing an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a power of sale in a mortgage or deed of trust.

Becker would have alleged that based on his Section 2943 claim, the three loans were extinguished on November 4, 2010, and the foreclosure caused him to lose the equity in his property and caused him to lose rent income. The Defendants also caused Plaintiff damage because since they did not own the notes, in their

foreclosure documents they claimed fees, interest, and payments they were not due.

Plaintiff would have amended his claim to allege that tender was not required because the foreclosure sale of his properties had not occurred. Also, since the Defendants did not own the notes, it would have been inequitable to enforce the debt against him. Becker would have argued that since the Defendants did not own his notes and the loan obligations were extinguished, their foreclosure documents are malicious and not protected by Civil Code § 2924(d) or Civil Code § 47.

During discovery, in his first set of interrogatories, Becker asked Wells Fargo to identify any and all documents that established that Wachovia or Wells Fargo purchased, acquired, was the transferee, became the payee or obtained a beneficial interest in the subject loans (Exh. 6, Interrogatories10 and 12). Here, the subject loans are the nine loans that are the subject of Becker's complaint (Exh. 6, Definitions). Wells Fargo responded that all the documents that established that Wachovia or Wells Fargo purchased, acquired, was the transferee, became the payee or obtained a beneficial interest in the subject loans were their corporate succession documents (Exh. 7 ; response to Interrogatories 10 and 12). A review of the succession documents (Exh. 8) reveals that the documents say nothing about what assets or loans Wachovia obtained when they purchased Golden West and World Savings or that Wells Fargo obtained when they purchased Wachovia. The

documents do not meet the California Commercial Code criteria to establish that either Wachovia or Wells Fargo owned Becker's notes.

Wells Fargo was asked to explain how the corporate succession documents complied with the California Commercial Code but refused to answer (Exh. 7; Interrogatory 11 and 13 and responses).

The documents, in fact, do not establish that Wells Fargo purchased, acquired, was the transferee, or became the payee in the subject loans. Becker issued a subpoena to Fannie Mae to determine which of his nine loans they owned (Exh. 9). Fannie Mae provided documents showing they had acquired Becker's 434 Walnut Avenue, 1440 Greenwich Drive; 228 Quarry Stone Way, and 814 Debra Street notes on October 1, 2007 (Exh.10). This is well over a year before Wells Fargo purchased Wachovia on December 31, 2008. None of the notes for the four properties provided during document production in 2013 show any indorsement to Fannie Mae. See Exhibit 4 for the Walnut avenue note and Exhibit 5 for the Debra Street note.

Becker was erroneously denied leave to amend his wrongful foreclosure claim because the below court erroneously applied HOLA preemption to the claim. The below court did not find amendment to this claim would be futile for any other reason. Had Becker been allowed to amend his claim, he would have stated a claim

for which relief could have been granted and which justified the preliminary injunction. Wells Fargo would not have prevailed with their motion for summary judgment and Wells Fargo would not have been able to argue they were wrongfully enjoined by the preliminary injunction.

The below court also erroneously dismissed Becker's FAC claim for quiet title based of HOLA preemption which also would have prevented Wells Fargo from claiming they were wrongfully enjoined by the preliminary injunction.

The California Commercial Code is based on the federal guide Uniform Commercial Code. The California Commercial Code is excluded from preemption by both 12 C.F.R. 560.2(c) and 12 C.F.R. §34.4(c). The California Commercial Code is not in conflict with federal statutes or regulations and is not preempted.

### b. TAC Claims

The district court found that Becker's TAC claims for Preempted/Unlawful Foreclosure (ECF # 98, TAC ¶¶ 73 - 80) and Improper Foreclosure Process (ECF # 98, TAC ¶¶ 81 - 89) were re-packaged claims for previously dismissed FAC claims for wrongful foreclosure and quiet title and dismissed the TAC claims and parts of other TAC claims. (ECF # 115; p. 10:12 - 23; ECF # 123). The TAC claims were significantly different and it was clear error to dismiss the claims.

The FAC claims for wrongful foreclosure (ECF # 19; ¶¶ 289 - 304) and quiet title (ECF # 19; ¶¶ 305 - 307) are based on the allegation that there is no assignment of the notes for Becker's properties from World Savings to either Wachovia or Wells Fargo. Becker also alleged, based on information and belief, that the individuals who signed the "Declaration of Wells Fargo Bank, N.A." that accompanied the Notices of Defaults were "Robo Signers" who had no idea of what they were signing (ECF # 19; FAC ¶ 298).

The magistrate judge recommended dismissal of these FAC claims with prejudice based on HOLA preemption (ECF # 49; p. 27:13 - 14). The district judge adopted the findings and recommendations (ECF # 58). However, as argued supra, HOLA does not apply to Becker's complaint. In addition, the TAC claims for Preempted/Unlawful Foreclosure and Improper Foreclosure Process are not based on allegations that the Defendants do not own Becker's notes. Becker's Preempted/Unlawful Foreclosure claim is based on contract law. The Improper Foreclosure Process claim is based on criminal law. Neither contract nor criminal law is preempted by HOLA.

///

///

### (1)    The Deeds Of Trust Do Not Provide For Sale Of Becker's Property

In his preempted/unlawful foreclosure claim (ECF # 98; TAC ¶¶ 73 - 80), Becker alleged that all nine of his notes and deeds of trust invoke federal law and regulations applicable to federally charted institutions (ECF # 98; TAC ¶¶ 74 - 76). Becker argued that it was clear that the federal laws and regulations were applicable to the terms in the notes and deeds of trust (ECF # 98; TAC ¶ 77). Becker argued that 12 C.F.R § 560.2(b)(5), (9), (10), and (11) were applicable to the terms in the notes and deeds of trust and Cal.Civ. Code § 2924 et seq. is preempted and not an applicable law for exercise of the power of sale for Becker's nine properties (ECF # 98; TAC ¶ 78). Becker argued that the defendants should have known that Cal.Civ. Code § 2924 et seq. is not an applicable law for exercising the power sale and that the defendants were attempting, with malice, to foreclose on Becker's Shelborne, Larkflower, and 3RD Street properties causing Becker damage (TAC ¶ 79). Becker gave the Defendants fair notice concerning his claim.

Becker argued that in *DeLeon v. Wells Fargo Bank, N.A.,* 729 F.Supp.2d 1119, the court stated that provisions in Cal. Civ. Code § 2924 are preempted:

> Numerous district courts have held that state laws requiring banks to provide specific notices or disclosures during the foreclosure process

are preempted by HOLA. *See, e.g., Giordano v. Wachovia Mortg., FSB,* No. 5:10–cv–04661–JF, 2010 WL 5148428, at *3–4 (N.D.Cal. Dec.14, 2010) (finding that HOLA preempts state laws setting forth procedures for filing a notice of default and conducting a foreclosure sale); *Odinma v. Aurora Loan Services,* No. C–09–4674 EDL, 2010 WL 1199886, at *8 (N.D.Cal. Mar.23, 2010) (holding that state law requiring notice of default is preempted). This Court agrees that a UCL claim premised on failure to provide adequate notice of a trustee's sale would impose requirements directly relating to the processing, servicing, or participation in mortgages and is therefore preempted pursuant to 12 C.F.R. 560.2(b)(10).

In *Giordano v. Wachovia Mortg., FSB,* 2010 WL 5148428, at *3–4 (N.D.Cal. Dec.14, 2010), the court stated:

Although the Ninth Circuit has yet to address the issue, several district courts within the circuit—including this Court—have concluded that claims under these sections are preempted by HOLA. *See DeLeon,* 2010 WL 2382404, at *6(claims under § 2924 preempted); *see also Nguyen v. Wells Fargo Bank, N.A.,* ––– F.Supp.2d –––, 2010 WL 4348127, at *10 (N.D.Cal. Oct.27, 2010) (claims under § 2923.5 preempted); *Quintero Family Trust v. One West Bank, F.S.B.,* 2010 WL 2618729, at *6–7 (S.D.Cal. June 25, 2010) (claims under § 2923.5 preempted). These courts have concluded that §§ 2923.5 and 2924 fall squarely within § 560.2(b) (10), preempting "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages."

California U.S. District Courts have consistently determined that HOLA preempts Cal. Civ. Code § 2924 et seq. Since 12. C.F.R. § 560.2(b) is a federal regulation and the notes and deeds of trust for Becker's properties are governed by and construed under federal laws and regulations and since Cal. Civ. Code § 2924 et seq. is preempted by federal regulation, Cal. Civ. Code § 2924 et seq. is not an

applicable law for Wells Fargo's exercise of the power of sale for Becker's

properties. Wells Fargo's use of Cal. Civ. Code § 2924 et seq. is preempted and

unlawful (ECF # 98; TAC ¶¶ 73 - 80). Since HOLA is incorporated into the notes

and deeds of trust, it applies to the terms within the notes and deeds of trust.

In *Pimentel v. Wells Fargo, N.A.,* 2015 WL 2184305 (N.D. Cal. May 7, 2015),

Wells Fargo admitted that HOLA applies to the terms of the notes and deeds of

trust stating that the documents are to be "governed by and construed under federal

law and federal rules and regulations, including those for federally chartered

savings institutions."

The *Pimentel* (*id*.) Court stated:

> Furthermore, the contractual provision that the loan documents are to be "governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions" can only be interpreted to apply when such laws are applicable, not in every instance of a dispute between the lessee and a subsequent holder of the loan. To interpret the contractual language more broadly than that would be neither reasonable nor correct.

Had Becker been allowed to proceed with this claim he would have argued that

foreclosure was wrongful because since Cal. Civ. Code § 2924 et seq. is

preempted, the Defendants were causing an illegal, fraudulent, or willfully

oppressive sale of the property pursuant to a power of sale in a mortgage or deed of

trust.

Becker would have argued that based on his Section 2943 claim, the three loans were extinguished on November 4, 2010, and the foreclosure would cause him loss of the equity in his property and loss of rent income. Becker also had to spend considerable time and money to protect his property from the illegal foreclosure. The Defendants also caused Becker damage because since they did not own the notes, in their foreclosure documents they claimed fees, interest, and payments they were not due.

Becker would have argued that tender was not required because the foreclosure sale of his properties had not occurred. Also, since the Defendants did not own the notes, it would have been inequitable to enforce the debt against him. Becker would have argued that since the Defendants knew, or should have known, that Cal. Civ. Code § 2924 et seq. is preempted their foreclosure documents are malicious and not protected by Civil Code § 2924(d) or Civil Code § 47.

Becker's preempted/unlawful foreclosure claim was erroneously dismissed because HOLA does not apply to contract claims. Had Becker been allowed to proceed with this claim, he would have stated a claim for which relief could have been granted and which justified the preliminary injunction. Wells Fargo would not have prevailed with their motion for summary judgment and Wells Fargo would not have been able to argue they were wrongfully enjoined by the preliminary injunction.

43

Becker's preempted/unlawful foreclosure claim is based on contract law and is excluded from preemption by both 12 C.F.R. 560.2(c) and 12 C.F.R. §34.4(c).

### (2) **Improper Foreclosure Process**:

In his Notice of Motion and Motion to Amend Complaint, Memorandum of Points and Authorities (ECF # 98; MP&A; 2:5 - 3:7), Becker stated that subsequent to the SAC, he submitted samples of signatures of individuals who signed and/or notarized the Substitutions of Trustee (SOT) and Notices of Default (NOD) for his properties to a forensic document examiner. The document examiner concluded that signatures were forged. Significantly, the signature of "Rosalyn Hall" on the Notary Oath Card obtained from the San Diego County Recorder did not match any of the "Rosalyn Hall" notary signatures on the SOT's for Becker's properties. In other words, the SOT's and NOD's used by Wells Fargo's agent, Cal-Western Reconveyance Corporation were forged. In his claim, Becker used the term "Robosigning" to indicate forged signatures (ECF # 98, ¶ 86). In his FAC, Becker used the term "Robo Signers" to indicate that individuals were signing "Declaration of Wells Fargo Bank, N.A." that accompanied the Notices of Defaults and that the signers did not understand the documents they signed (ECF # 19; ¶ 298). The allegation in the FAC is based on information and belief and has nothing to do with the signatures on the SOT's or the NOD's. The allegations in Becker's

TAC claim for improper foreclosure process is based on the opinions of a forensic

document examiner rather than on information and belief.

Clearly, the TAC claim is one for forgery and fraud and is distinct from Becker's

FAC claims. Becker alleged (ECF # 98; TAC ¶ 83):

> For Rosalyn Hall, if the Notary Oath card contains the valid Rosalyn
> Hall signature, then none of the other ten documents (including the five for
> plaintiff's properties) were signed by Rosalyn Hall.

Pursuant to *Wells Fargo Bank, N.A. v. Heintz*, 2012 WL 9496361 (C.D. Cal.,

Jan. 18, 2012), which concerned forged SOT's:

> Forgery, as prohibited by California criminal law, is "either ...  the false
> making or alteration of a document without authority of the uttering (making
> use) of such a document with the intent to defraud.

Wells Fargo's agent recorded forged documents which are false documents in

violation of California Penal Code Sections 470, 115 and 115.5. Thus, even if

HOLA applies, claims for forgery and fraud are based on criminal law and are not

preempted by HOLA. Since this claim is distinct from Becker's FAC claims and is

based on evidence obtained subsequent to the FAC, it was clearly erroneous that

the claim was dismissed.  Pursuant to *Bell Atlantic Corp. v. Twombly,* 550 U.S.

544, 555 (2007) (Complaint must "give the defendant fair notice of what the ...

claim is and the grounds upon which it rests.") Becker gave Wells Fargo fair notice

that the claim was one for improper foreclosure based on forged documents resting

on the analysis of a forensic document examiner.

Becker submitted his expert witness report concerning Wells Fargo's

foreclosure documents to the court on July 2, 2013 (Apndx. 7; ECF # 151). The

Larkflower Substitution of Trustee (SOT) is Exhibit 5.1.a (Apndx. 7; p. 75). The

3RD Street SOT is Exhibit 5.1.b (Apndx. 7; p. 76). The Shelborne SOT is Exhibit

5.1.c (Apndx. 7; p. 77).

In addition, Mr. Blanco, Mr. Becker's forensic document examiner, concludes

(Apndx. 7; ECF # 151; p. 16) :

> The twelve EXHIBIT 5 documents have been divided into three groups
> by writer. Although all of the twelve EXHIBIT 5 documents bear "Rosalyn
> Hall" signatures, forensic handwriting examinations revealed that these
> twelve "Rosalyn Hall" signatures were signed by three different people. One
> person wrote the six "Rosalyn Hall" signatures of Exhibit 5.1, while a
> different person wrote the five "Rosalyn Hall" signatures of the Exhibit 5.2
> group, and yet a third person wrote the single "Rosalyn Hall" signature of
> Exhibit 5.3.

Exhibit 5.3 (Apndx. 7; ECF # 151; p. 87) is the San Diego Notary Public Oath

and Certificate of Filing form wherein a state official verified the identity of the

real "Rosalyn Hall" and her signature. Thus, the SOT's for Becker's properties were

not signed by the real "Rosalyn Hall" notary. They were forged and of no legal

effect. Mr. Blanco concluded (Apndx. 7; ECF # 151; p. 17):

> Based upon an examination and analysis of the documents provided for
> examination, it is **highly probable** that three different people wrote the
> twelve EXHIBIT 5 "Rosalyn Hall" signatures. **"Highly probable"** is a term
> of art in Forensic Document Examination opinion rendering and means that
> the forensic document examiner is virtually certain as to the stated opinion

(**ASTM** - **A**merican **S**ociety for **T**esting and **M**aterials Designation: E 1658 - 08 Standard Terminology for Expressing conclusions of Forensic Document Examiners).

Wells Fargo's expert forensic document examiner, Ms. Sandra L. Homewood, examined the same documents as examined by Mr. Blanco. Concerning the "Rosalyn Hall" signatures, Ms. Homewood concluded (Apndx. 8; ECF # 154, p. 7):

The signatures of Rosalyn Hall on Exhibits 5.1 and 5.2 were written by the same writher. (ASTM Level 1)

The signature of Rosalyn Hall on Exhibit 5.3 shows some unexplained variations with the other Hall signatures and cannot be identified or eliminated as being of common authorship with the other signatures in Exhibit 5. ... (ASTM Level 5 - Inconclusive).

Ms. Homewood was not able to refute Mr. Blanco's conclusion that the "Rosalyn Hall" who signed the Notary Oath card in the presence of a San Diego County employee was *not* the person who notarized the SOT's for Becker's properties. The SOT's are forged.

In *Wells Fargo Bank, N.A. v. Heintz*, 2012 WL 9496361 (C.D. Cal., Jan. 18, 2012), Heintz recorded a forged Rescission of Notice of Default, a forged Substitution of Trustee and Deed of Reconveyance and a Grant Deed, purporting to convey the Property from Heintz to Golden West Capital. The court found:

Under certain circumstances, the interests of *bona fide* purchasers for value may be protected; however, those interests are not protected when the basis for their claim to superior title is void. *Wutzke,* 151 Cal.App.3d at 43, 198 Cal.Rptr. 418;*cf. Schiavon v. Arnaudo Brothers,* 84 Cal.App.4th 374,

378, 100 Cal.Rptr.2d 801 (2000) (*bona fide* purchaser protected where instrument was merely voidable, and not void). Here, not only has the Court has found that the documents upon which the Grant Deed is premised are void *ab initio,* the Court has found that the Grant Deed is itself void *ab initio.* These documents, even though recorded, were and are legal nullities, having no effect and conferring no legal rights. *See Wutzke,* 151 Cal.App.3d at 44 n. 4, 198 Cal.Rptr. 418 ("It is of no consequence that the forged reconveyance document was recorded.").

The forged SOTs Wells Fargo had recorded were void *ab initio* and thus had no legal effect. This means that the documents recorded after the forged SOTs, including the Notice of Defaults, Notice of Trustee's Sale, for the Shelborne, Larkflower and 3RD Street properties and the Trustee's Deeds for the Shelborne and 3RD Street properties are void *ab initio* and have no legal effect. This is because the alleged substitute trustee, Cal-Western Reconveyance Corporation, never actually became the trustee and did not have the authority to execute and record NODs, NOTSs, and Trustee's Deeds.

Since Cal-Western Reconveyance Corporation was not the trustee, they falsely made the NODs, NOTS's and Trustee's Deeds under the authority of the trustee which they did not have.

Pursuant to *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112(supra) and *Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250 (supra), Becker alleged that the foreclosure process was fraudulent and illegal (ECF # 98;

48

TAC ¶ 86). Becker alleged that he was caused damage (ECF # 98; TAC ¶ 88).

Becker alleged that tender was not required (ECF # 98; TAC ¶ 87). Becker also

alleged that it was with malice that the defendants recorded, posted, published ,

and sent the foreclosure documents such that they are not privileged documents

(ECF # 98; TAC ¶ 86).

Becker's improper foreclosure claim was erroneously dismissed because HOLA

does not apply to claims based on crime. Had Becker been allowed to proceed with

this claim, he would have stated a claim for which relief could have been granted

and which justified the preliminary injunction. Wells Fargo would not have

prevailed with their motion for summary judgment and Wells Fargo would not

have been able to argue they were wrongfully enjoined by the preliminary

injunction.

Becker's improper foreclosure claim is based on criminal law and is excluded

from preemption by both 12 C.F.R. 560.2(c) and 12 C.F.R. §34.4(c).

## 7.  **CONCLUSION**

Becker's claims are based on actions by the Defendants that occurred after

November 1, 2009, when the Defendants were subject to the National Bank Act.

Based on the above facts and arguments, Becker requests that this Court find that

the below court erroneously concluded that HOLA applies to Becker's claims and

49

that, instead, the National Bank Act applies to Becker's claims. Becker requests that this Court find that since the NBA does not provide the OCC with field preemption, Becker's FAC fifth claim based on Cal. Civ. Code § 2943, sixth claim for wrongful foreclosure proceedings, and seventh claim for Quiet Title are based on state laws that are not preempted and the below court erroneously dismissed these claims. Becker requests that this Court also find that Becker's TAC fifth claim for preempted/unlawful foreclosure and sixth claim for improper foreclosure process are based on state laws that are not preempted and the below court erroneously dismissed these claims.

Becker requests that this Court remand back to the district court and order that Becker be allowed to amend his FAC fifth, sixth, and seventh claims and TAC fifth and sixth claims to incorporate Wells Fargo's 2009 annual report and assert damages associated with Wells Fargo's violation of Cal. Civ. Code § 2943 and the wrongful non-judicial foreclosure sale of his Shelborne and 3RD Street properties.

Becker also requests that this Court order the below court to allow Becker to amend his complaint based on evidence obtained through discovery and based on laws that were in effect in November of 2014 when Wells Fargo wrongfully had his 865 Shelborne, Tracy, CA and 2416 3RD Street, Lincoln, CA properties sold at a Trustee's Sale. Becker requests that he be given 60 days to amend his complaint.

If this court determines that HOLA is applicable to Becker's claims, Becker requests that the Court find that HOLA does not preempt claims based on the California Commercial Code, contract law, or criminal law and that Becker's sixth and seventh FAC claims and fifth and sixth TAC claims are not preempted and order the below court to allow leave to amend these claims.

Based on the above, Becker requests that this Court find that HOLA preempts California's procedures for conducting non-judicial foreclosure sales and that preempted state statutory procedures are not available for use by any entity for Becker's loans. Also, Becker requests that this Court find that HOLA and 12 C.F.R § 560.2 are incorporated into the notes and deeds of trust for Becker's nine properties and govern the terms of the documents; that the terms of the documents are binding on World Savings and its successors and assigns, including Wells Fargo Bank, N.A.; and that by the terms of the notes and deeds of trust, Wells Fargo Bank, N.A. sold Becker's Shelborne and 3RD Street properties and initiated a process to sell his Larkflower property by a process that is preempted and not available for their use.

Becker requests that this Court find that the below court erroneously dismissed claims for which relief could have been granted and that the below court erroneously granted the Defendants' motion for summary judgment. Becker requests that this Court reverse the below court's order granting the summary

judgment (ECF # 202) and judgment (ECF # 203) concerning the motion for summary judgment.

Becker requests that this Court find that the below court erroneously awarded the Defendants their costs (ECF # 221) and erroneously awarded the Defendants their attorney fees (ECF # 227). Becker requests that this Court reverse the award of costs and attorneys' fees and order the below court to immediately exonerate and return to Becker the supersedeas bond of $188,706.43 he posted (Receipt number #CAE200066353) to appeal the below court's award of costs and attorneys' fees.

Becker requests that this Court find that the below court erroneously granted the Defendants' motion for disbursement of bond funds of $84,335.00 of the preliminary injunction bond funds to Defendant Wells Fargo Bank, NA., Inc. Becker requests that this Court reverse the below court's order (ECF 264) and order the below court to immediately exonerate and return to Becker all of the preliminary bond funds he posted.

## 8.   STATEMENT OF RELATED CASES

The instant appeal is the third appeal related to Becker's district court case 2:10-cv-2799. In the first appeal (No. 14-16783), Becker argued that the below court erroneously granted Wells Fargo's motion for summary judgment. In the second

appeal (No. 15-15322), Becker argued that the below court erroneously awarded

Wells Fargo costs and attorneys' fees.

Becker's appeal in case number 13-16772, *Dennly R. Becker v. Wells Fargo*

*Bank, N.A. Inc*., contains claims and arguments similar to those in case number 14-

16783.


## 9.   <u>CERTIFICATE OF COMPLAINCE</u>

This brief complies with the type-volume limitation of Federal Rule of

Appellate Procedure 32(a)(7)(B) because this brief contains 12,808 words,

excluding the parts of the brief exempted by Federal Rule of Appellate Procedure

32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate

Procedure 32(a)(5), and the type style requirements of Federal Rule of Appellate

Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced

typeface using the Microsoft Word 2010 word processing program, a 14-point font

size, and the Times New Roman type style.

Respectfully submitted,


   __/s/ *Dennly R. Becker*_____                Dated: December 30, 2015

Dennly R. Becker